**STATE of Minnesota, Respondent,**

v.

**Benjamin Perry RICHARDSON, Appellant.**

No. CX–93–460.

Court of Appeals of Minnesota.

March 29, 1994.

575

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Michael O. Freeman, Hennepin Co. Atty., Linda K. Jenny, Asst. Co. Atty., Minneapolis, for respondent.

Earl P. Gray, Mark D. Nyvold, Gray & Malacko Law Offices, St. Paul, for appellant.

## OPINION

DANIEL F. FOLEY, Judge.

Appellant was convicted of first and second degree controlled substance crimes for the

sale and possession of cocaine. He argues his conviction should be reversed based on prosecutorial misconduct and the improper testimony of a witness. Appellant also seeks the suppression of evidence, arguing there was no probable cause for the issuance of a search warrant. We reverse and remand.

## FACTS

Minneapolis police learned from an informant that a man named Ernest Dailey was distributing crack cocaine. The informant stated that Dailey goes to a condominium complex at One West Lake Street and gets the crack from a man known as "Bennie Ray," alleged to be appellant Benjamin Perry Richardson. Appellant lived in Unit 318 at One West Lake Street.

On January 21, 1992, a Minneapolis police officer arranged through an informant to purchase crack from Dailey. A police officer watched Dailey go into the condominium complex at One West Lake Street. Dailey returned to the informant and the pair drove to an address in South Minneapolis and Dailey gave the informant a bag of crack.

On January 27, 1992, the police again arranged for an informant to purchase crack from Dailey. A police officer saw the informant meet with Dailey. Dailey then went into the condominium complex at One West Lake Street. Dailey again returned to the informant and the two drove away. The police then stopped the car. A search of the car revealed a paper towel containing a large bag of crack. Police believed Dailey obtained the crack from appellant. Dailey was arrested and charged with controlled substance crimes. Dailey later agreed to cooperate with police and testify against appellant.

Before appellant's arrest, police had also received information from a different informant that appellant was a "multi-kilo" drug trafficker and lived at One West Lake Street. Based on this information, police applied for and obtained a warrant to search Unit 318 at One West Lake Street. The warrant was executed on January 27, 1992. Upon entry, police seized cocaine, a gram scale, paper towels that matched the paper towel found in Dailey's car, and a large amount of cash,

including marked bills that the informant had given to Dailey. Police also found several documents listing appellant as the owner of Unit 318.

Police watched Unit 318 after executing the search warrant. Two hours after the search, appellant arrived at the condominium complex. After entering the building, appellant left quickly in his car. Police stopped appellant and he was arrested and taken into custody. Richardson was charged with first and second degree controlled substance crimes and the matter proceeded to a jury trial. At trial, appellant's defense was that he let Dailey stay in his home and that Dailey was the seller of the drugs, not he.

Following the trial, appellant was found guilty of a first degree controlled substance crime, in violation of Minn.Stat. § 152.021, subds. 1(1), 3(b) (1992), and a second degree controlled substance crime, in violation of Minn.Stat. § 152.022, subds. 1(1), 3(b) (1992). The trial court denied appellant's new trial motion. Judgment was entered and appellant was sentenced. This appeal followed.

## ISSUES

I. Was the prosecutorial misconduct harmless beyond a reasonable doubt?

II. Was the search warrant authorizing a search of appellant's home supported by probable cause?

## ANALYSIS

### I. *Prosecutorial Misconduct*

■ Appellant argues the prosecutor's serious misconduct so pervaded the trial that the jury's verdict is not a fair and reliable determination of his guilt or innocence. We agree.

■ An attorney at trial is an advocate and, as an officer of the court, cannot be a zealot. *State v. Salitros,* 499 N.W.2d 815, 816 (Minn.1993). The attorney's role is to insure the case is decided on the basis of the evidence relevant to the issues raised and the legitimate inferences from that evidence, not on the basis of extraneous matters. *Id.* A

prosecutor may not seek a conviction "at any price." *Id.* at 817.

In *Salitros,* the supreme court cited the American Bar Association's Standards for Criminal Justice in guiding a prosecutor's conduct. *Id.* at 817–18. The ABA Standards provide:

(a) The prosecutor may argue all reasonable inferences from evidence in the record. It is unprofessional conduct for the prosecutor intentionally to misstate the evidence or mislead the jury as to the inferences it may draw.

(b) It is unprofessional conduct for the prosecutor to express his or her personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant.

(c) The prosecutor should not use arguments calculated to inflame the passions or prejudices of the jury.

(d) The prosecutor should refrain from argument which would divert the jury from its duty to decide the case on the evidence, by injecting issues broader than the guilt or innocence of the accused under the controlling law, or by making predictions of the consequences of the jury's verdict.

American Bar Association Standards for Criminal Justice, Standard 3–5.8 (2d ed. 1980). Additionally, in presenting evidence, it is unprofessional conduct for a prosecutor to

knowingly and for the purpose of bringing inadmissible matter to the attention of the judge or jury to offer inadmissible evidence, ask legally objectionable questions, or make other impermissible comments or arguments in the presence of the judge or jury.

*Id.,* Standard 3–5.6(b).

The prosecutor's conduct in this case did not meet the ABA Standards. The following examples are illustrative of the numerous instances of prosecutorial misconduct.

■ (1) A police officer was asked by defense counsel on cross-examination if any documents were seized indicating the nature of appellant's employment. Before the officer answered, the prosecutor interrupted and

said, in the jury's presence, "I take it counsel is referring to employment other than transactions in cocaine?"

Such an unwarranted comment improperly injected the prosecutor's personal belief as to appellant's guilt. *See State v. Eling,* 355 N.W.2d 286, 294 (Minn.1984) (attorney may not assert personal opinion). Moreover, the comment was clearly designed to influence and inflame the passions of the jury. *See State v. Walsh,* 495 N.W.2d 602, 606 (Minn. 1993) (prosecutor's statement unduly inflammatory).

■ (2) The prosecutor asked appellant's daughter on cross-examination, "In 1992, did you know that your father was actively involved in selling cocaine in Minneapolis?" Similarly, the prosecutor asked appellant's foster brother if he ever asked appellant what he did for a living. After the witness stated that he had not, and said he thought appellant was a real estate investor, the prosecutor asked, "Did you know [appellant] also sold cocaine during that period of time?" The prosecutor also asked appellant's neighbor on cross-examination, "Did you ever suspect that something like coke selling was going on in that apartment?"

These questions were not relevant and there was no basis in the record for such questions. *See* Minn.R.Evid. 402 (evidence which is not relevant is not admissible). The prosecutor was improperly attempting to prove appellant's guilt by establishing his character as a drug dealer. *See* Minn. R.Evid. 404(a) (evidence of a person's character not admissible for proving action in conformity therewith on a particular occasion).

■ (3) The prosecutor asked a defense witness if he worked for appellant selling cocaine. When the witness denied working for appellant, the prosecutor asked, "You were involved in discussions with the Defendant about making a trip to Chicago this weekend or last weekend, weren't you? * * * For purposes of purchasing cocaine?"

There was no factual basis in the record for this question, which also improperly attempted to prove appellant's guilt by establishing his character as a drug dealer. The

mere asking of an improper question may be sufficient to communicate to the jury the very information the rules of evidence were designed to keep out.

■ (4) The prosecutor asked Ernest Dailey if he had enough money at the time he was charged to retain the services of a private criminal defense attorney. Dailey stated that he had a public defender. Since it was appellant's theory that Dailey was the drug dealer, the question implied that appellant could afford to hire a private attorney because he had money from drug dealing and that Dailey could not have been the drug dealer.

■ (5) During the cross-examination of Ernest Dailey's attorney, the prosecutor asked:

> [Y]ou are aware, are you not, of one of the ethical constraints under which lawyers who regularly appear in court operate, and that is the constraint that the lawyer can't knowingly proffer or put a witness on the stand who is going to perjure himself or herself?

This question implied to the jury that the witnesses called by the prosecution to prove the state's case were telling the truth, otherwise the prosecutor could not have called them. In particular, the question implied that the prosecutor had personal knowledge that Dailey was telling the truth.

■ (6) During cross-examination, appellant's neighbor stated that she worked for "The City, Inc." The prosecutor asked if that was the "outfit run by Sharif" and "Spike Moss" and noted that they had been "in the papers recently."

Appellant's trial took place approximately one month after the murder of Minneapolis police officer Jerry Haaf, and publicity indicated the murder was related to Sharif Willis and Spike Moss. This case had nothing to do with the Haaf murder; thus, the prosecutor improperly injected the issue of a murdered police officer to discredit and stigmatize the witness. The injection of the Haaf incident was not only irrelevant, but could only have inflamed the passions and prejudices of the jury.

■ (7) During the questioning of Ernest Dailey, the prosecutor continued to ask Dailey about hearing from his brother that a "hit" had been ordered on him, despite a sustained objection. This is another example of the prosecutor's attempt to bring inadmissible matters to the attention of the jury. Moreover, references to the alleged "hit" were beyond the scope of appellant's guilt or innocence and served to inflame the passions or prejudices of the jury.

■ (8) The prosecutor improperly cross-examined appellant about his failure to call witnesses who supposedly could have helped appellant establish his defense.

A prosecutor may not comment on a defendant's failure to call witnesses. *State v. Fields,* 306 Minn. 521, 522, 237 N.W.2d 634, 634 (1976). Such a comment might improperly suggest to the jury that the defendant has some duty to produce witnesses or bears some burden of proof. *Id.* The burden of proof remained on the state throughout the trial.

■ (9) During the cross-examination of appellant and in the closing argument, the prosecutor improperly commented on appellant's failure to tell the arresting officer or other persons the version of events which he was testifying to at trial. The prosecutor persisted in making such an argument despite a sustained objection.

■ A defendant may not be impeached by his failure to offer alibi evidence at any time prior to trial. *State v. Billups,* 264 N.W.2d 137, 139 (Minn.1978). Post-arrest silence is ambiguous because a defendant has the right to remain silent. *Id.* at 138–39. Thus, it is fundamentally unfair and a deprivation of due process to allow a person's silence to be used to impeach an explanation subsequently offered at trial. *Id.* at 139.

■ Some of the cited examples were objected to at trial while others were not. The general rule is that if a defendant fails to object to the prosecutor's improper statements, or to seek a cautionary instruction, the issue is waived for purposes of appeal. *State v. Ture,* 353 N.W.2d 502, 516 (Minn. 1984).

■ It is clear, however, that a court may take notice of errors in fundamental law or plain errors affecting substantial rights even in the absence of objection by counsel. *Salitros*, 499 N.W.2d at 820 (citing Minn.R.Evid. 103(d)). Generally, these errors must be prejudicial. *Id.* In the present case, we believe the cited examples constitute serious misconduct and, when considered together, constitute plain error. Therefore, we do not address whether there was an objection to each specific instance of misconduct. In any event, the damage may only be enhanced by an objection to the evidence, so that the offer of inadmissible evidence may leave opposing counsel with no effective remedy.

■ In cases involving unusually serious misconduct, the reviewing court requires "certainty beyond a reasonable doubt that the misconduct was harmless before affirming." *State v. Caron*, 300 Minn. 123, 127–28, 218 N.W.2d 197, 200 (1974).

■ Standing alone, each incident of misconduct may not have improperly influenced the jury to convict. On review, however, we must look at the prosecutor's conduct as a whole. *Walsh*, 495 N.W.2d at 607. The more serious the misconduct, the more likely the misconduct was harmful. *State v. Van-Wagner*, 504 N.W.2d 746, 749 (Minn.1993). The error and its impact must be examined within the context of the record as a whole, considering the strength of the state's evidence and the weakness of any defense evidence. *Id.* The case should turn on the evidence, not the actions of the prosecutor.

In this case, viewing the prosecutor's argument as a whole, the misconduct was not harmless beyond a reasonable doubt. There is considerable evidence in the record to demonstrate appellant's guilt. We cannot say, however, that evidence of appellant's guilt is "overwhelming." *See, e.g., State v. Merrill*, 428 N.W.2d 361, 372 (Minn.1988). If appellant and his witnesses were to be believed, there was plausible evidence that the crack cocaine and money found in appellant's home belonged to Dailey.

The weight given to much of the evidence in this case depended on witness credibility. Under such circumstances, the prosecutor's misconduct tended to exploit the influence of the prosecutor's office and undermine the objective detachment that should have separated the prosecutor from the case being argued. Therefore, appellant was denied his constitutional right to a fair trial. We are at a loss to understand why the prosecutor persisted in the manner he did except to conclude that he sought to inflame the jury under the theory that "anything goes." That is not the law in Minnesota. Accordingly, we reverse appellant's conviction and remand for a new trial.[1]

## II. *Search Warrant*

■ Appellant argues that evidence of the drugs and money seized pursuant to the search warrant should have been suppressed because the supporting affidavit in the application for the search warrant failed to establish a probability that drug activity occurring in appellant's condominium complex had anything to do with appellant's particular unit. We disagree.

Great deference should be given to the magistrate's determination of probable cause for the issuance of a search warrant. *State v. Jannetta*, 355 N.W.2d 189, 194 (Minn.App. 1984), *pet. for rev. denied*, (Minn. Jan. 14, 1985). If the facts are not in dispute, however, this court must independently apply the case law to the facts and need not give deference to the district court. *See State v. Storvick*, 428 N.W.2d 55, 58 n. 1 (Minn.1988).

■ The issuance of a search warrant requires probable cause, supported by affidavit. Minn.Stat. § 626.08 (1992). Although police officers may rely on training and experience to draw inferences and make deductions, mere suspicion does not equal probable cause. *State v. Skoog*, 351 N.W.2d 380, 381 (Minn.App.1984). The test of probable cause is met if the affidavit sets forth competent evidence sufficient to lead a reasonably prudent person to believe there is a basis for the search. *State v. Bagley*, 286 Minn. 180, 192, 175 N.W.2d 448, 456 (1970) (citing *State v.*

---

1. Because we are granting appellant a new trial, we need not address the merits of appellant's argument that the improper and nonresponsive testimony of Ernest Dailey requires a new trial.

*Suess,* 280 Minn. 308, 312, 159 N.W.2d 180, 182 (1968)). This determination should be made under the "totality of the circumstances test." *State v. Wiley,* 366 N.W.2d 265, 268 (Minn.1985) (citing *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983)). In determining probable cause, the magistrate must make "a practical, common-sense decision" whether there is a "fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* A search warrant cannot be based on vague and uncertain information. *Jannetta,* 355 N.W.2d at 193.

Applying the law to the present case, we hold there was probable cause for the issuance of the search warrant.

The supporting affidavit clearly links drug activity to One West Lake Street. Appellant notes, however, that the affidavit does not state the informant knew the drugs were coming from Unit 318. Additionally, the police never observed anyone connected with the sting operation go into Unit 318. Therefore, appellant argues the affidavit supports only the guess that somewhere within One West Lake Street, some kind of illegal activity was being conducted.

There was, however, considerable evidence linking appellant to the illegal drug activity. The affidavit described in detail that an informant had accompanied Ernest Dailey to One West Lake Street to purchase crack cocaine from a man named "Bennie Ray." The affiant knew "Bennie Ray" to be appellant. Police then checked the address at One West Lake Street and learned that appellant lived in Unit 318. Police had also received a separate tip that appellant was a cocaine dealer. The affiant noted that the two informants had proven reliable in the past.

Based on these facts, we hold the affidavit set forth competent evidence to show a fair probability that contraband or evidence of a crime would be found in Unit 318. Accordingly, there is no basis to suppress the seized evidence.

## DECISION

Appellant is entitled to a new trial because the serious prosecutorial misconduct that oc-

curred during trial is not harmless beyond a reasonable doubt.

Reversed and remanded.