**STATE of Minnesota, Respondent,**

v.

**Scott Charles WARD, Appellant.**

**No. C1–97–1716.**

Court of Appeals of Minnesota.

June 16, 1998.

Hubert H. Humphrey III, Attorney General, Natalie E. Hudson, Assistant Attorney General, St. Paul, for respondent.

Michael K. Riley, Nicollet County Attorney, St. Peter, for respondent.

John M. Stuart, State Public Defender, Judith Williams–Killackey, Special Assistant State Public Defender, Dorsey & Whitney, LLP, Minneapolis, for appellant.

Considered and decided by WILLIS, P.J., and RANDALL and KLAPHAKE, JJ.

## OPINION

WILLIS, Judge.

Scott Ward appeals his conviction of fifth-degree possession of a controlled substance on the ground that the warrant authorizing the search during which the narcotics were discovered was not supported by sufficient probable cause. We reverse.

## FACTS

On July 3, 1996, Douglas Rauenhorst, a Blue Earth County Peace Officer assigned to the multi-jurisdictional Minnesota River Valley Drug Task Force, submitted a four-paragraph affidavit in support of his application for a warrant to search room 176 of the Best Western Garden Inn in North Mankato. The first paragraph of the affidavit identified the affiant and the Task Force. The next two paragraphs stated:

Within seventy two hours on either side of a date July 2, 1996 a Confidential Informant hereinafter referred to as a CI entered the room 176 at the Best western [sic] Garden Inn in North Mankato. The CI was able to obtain a small sample of a green vegetable material. The field test indicated that the substance was marijua-

na. The field test was conducted by the affiant.

A check of the records at the motel indicate that the room is rented by a male named Scott Ward.

The final paragraph listed items commonly found in the possession of drug dealers. The record does not ·show that any additional information was supplied to the issuing judge.

The judge issued a search warrant, which police executed on the evening of July 3. The search uncovered 228 grams of marijuana, assorted drug paraphernalia, and $6,700. Ward was charged with fifth-degree possession of a controlled substance and with possession of marijuana without tax stamps; the prosecutor subsequently dropped the latter charge.

At the omnibus hearing, Ward challenged the validity of the warrant on probable cause grounds. Officer Rauenhorst's supervisor testified that the informant obtained the marijuana during a controlled buy, and Ward testified that he had been occupying the hotel room since July 1. Finding the case "very close," the court upheld the validity of the warrant on the grounds that admitting to the possession of marijuana was against the informant's penal interest and that doubtful or marginal cases should be decided in favor of validity of the warrant.

Ward proceeded on stipulated facts, while preserving his right to appeal the probable cause issue. He was found guilty and sentenced to five years probation and a $2,000 fine. He now appeals from the probable cause determination, and we reverse.

## ISSUE

Did the district court err in concluding that the affidavit provided sufficient probable cause to support issuance of the search warrant?

## ANALYSIS

### I. Probable Cause Standards

#### A. General standards

■ Hotel guests have a sufficient expectation of privacy in their rooms to give rise to Fourth Amendment protections against search and seizure. *State v. Williams*, 409 N.W.2d 553, 554 (Minn.App.1987).

■ A determination of probable cause for the issuance of a search warrant is entitled to great deference, but where the facts are not in dispute, this court must independently apply the case law. *State v. Richardson*, 514 N.W.2d 573, 579 (Minn.App.1994).[1] As the district court noted, "the resolution of doubtful or marginal cases should be largely determined by the preference to be accorded warrants." *State v. Wiley*, 366 N.W.2d 265, 268 (Minn.1985) (internal quotes omitted). But this deference is not unlimited. *State v. Gabbert*, 411 N.W.2d 209, 212 (Minn.App. 1987) (noting that magistrate may improperly analyze circumstances).

Probable cause has been defined variously as "the objective facts" that under the circumstances would cause "a person of ordinary care and prudence [to] entertain an honest and strong suspicion that a crime has been committed," *State v. Johnson*, 314 N.W.2d 229, 230 (Minn.1982) (internal quotes omitted); "a reasonable ground of suspicion supported by circumstances sufficiently strong in themselves to warrant a cautious [person] in believing the accused to be guilty," *State v. Childs*, 269 N.W.2d 25, 27 (Minn.1978) (internal quotes omitted); "evidence sufficient to lead a reasonably prudent person to believe there is a basis for the search," *Richardson*, 514 N.W.2d at 579 (citing *State v. Bagley*, 286 Minn. 180, 192, 175 N.W.2d 448, 456 (1970)); "a fair probability that contraband or evidence of a crime will be found in a particular place," *Wiley*, 366 N.W.2d at 268 (quoting *Illinois v. Gates*, 462

1. We disagree with the state's contention at oral argument that the standard of review established in *Richardson* represents an anomaly in the law. It is well established that appellate courts review issues of law, such as the interpretation of precedent, without deference to the district court's determinations. *Frost–Benco Elec. Ass'n v.*

*Minnesota Pub. Utils. Comm'n*, 358 N.W.2d 639, 642 (Minn.1984). It is only after we have determined that a magistrate's action in issuing a warrant falls within the outer boundaries established by case law that the rule of deference applies.

U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983)); and "a substantial basis for * * * conclud[ing] that a search would uncover evidence of wrongdoing." *Id.* "[M]ere suspicion does not equal probable cause." *Richardson,* 514 N.W.2d at 579.

 Minnesota has adopted the United States Supreme Court's "totality of the circumstances" test for determining whether probable cause exists. *Wiley,* 366 N.W.2d at 268. Under this test, "the reviewing court is not to review each component of the affidavit in isolation but is to view them together." *State v. McCloskey,* 453 N.W.2d 700, 703 (Minn.1990). The determination is limited to the information contained in the affidavit offered in support of the warrant application. *State v. Kahn,* 555 N.W.2d 15, 18 (Minn.App. 1996). The magistrate is to make a "'practical, common-sense determination,'" *Wiley,* 366 N.W.2d at 268 (quoting *Gates,* 462 U.S. at 238, 103 S.Ct. at 2332), which a reviewing court may not undermine by engaging in a "hypertechnical examination of the affidavit." *Kahn,* 555 N.W.2d at 18.

 "The law of probable cause prevents the issuance of a search warrant on the basis of vague and uncertain information." *State v. Jannetta,* 355 N.W.2d 189, 193 (Minn.App. 1984), *review denied* (Minn. Jan. 14, 1985). The affidavit must contain "'sufficient underlying facts so that the magistrate may draw his own conclusions of whether probable cause exists.'" *Hanson v. State,* 344 N.W.2d 420, 423 (Minn.App.1984) (quoting Minnesota Judge's Criminal Benchbook, 1–4 (1983 Supp.)). Reasonable inferences are part of the process of establishing probable cause. *State v. Eggler,* 372 N.W.2d 12, 15 (Minn. App.1985), *review denied* (Minn. Sept. 19, 1985). But the inferences must give rise to more than a "mere suspicion." *State v. Skoog,* 351 N.W.2d 380, 381 (Minn.App.1984).

**B. Informants**

 Where a probable cause determination is based on an informant's tip, the informant's veracity and the basis of his or her knowledge are considerations under the totality test. *State v. Albrecht,* 465 N.W.2d 107, 108 (Minn.App.1991). "Recent personal observation of incriminating conduct has tra-ditionally been the preferred basis for an informant's knowledge." *Wiley,* 366 N.W.2d at 269. Ward concedes that this basis of knowledge is established here.

 Minnesota courts have identified six considerations bearing on the reliability of an informant who is confidential but not anonymous to police. A first-time citizen informant who has not been involved in the criminal underworld is presumed to be reliable, but the affidavit must specifically aver that the informant is not involved in criminal activity. *State v. Siegfried,* 274 N.W.2d 113, 115 (Minn.1978). Similarly, an informant's reliability may be demonstrated where the informant has previously given police correct information, but the affidavit must explicitly state this to be the case. *Wiley,* 366 N.W.2d at 268.

 An informant's reliability may be established by sufficient police corroboration of the information supplied, and corroboration of even minor details can "lend credence" to the informant's information where the police know the identity of the informant. *See id.* at 269. Where an informant voluntarily comes forward (without having first been arrested) to identify a suspect, and in the absence of a motive to falsify information, the informant's credibility is enhanced because the informant is presumably aware that he or she could be arrested for making a false report. *Gabbert,* 411 N.W.2d at 213; *see also McCloskey,* 453 N.W.2d at 704. In narcotics cases, where the affidavit refers to a "controlled purchase," the magistrate may accept this as a term of art and presume that police searched the informant immediately before and after the alleged drug purchase and conducted surveillance of the purchase to the extent feasible. *State v. Hawkins,* 278 N.W.2d 750, 751–52 (Minn.1979).

 Finally, the fact that an informant makes a statement against his or her own penal interest "is of some minimal relevance in a totality-of-the-circumstances analysis." *McCloskey,* 453 N.W.2d at 704. But courts remain reluctant to believe

the typical "stool pigeon" who is arrested and who, at the suggestion of the police,

agrees to cooperate and name names in order [to] curry favor with the police.

*Id.* at 703. The rationale for the credit given to statements against interest is that "[p]eople do not lightly admit a crime and place critical evidence in the hands of the police in the form of their own admissions." *State v. Wiberg*, 296 N.W.2d 388, 395 n. 7 (Minn.1980) (quoting *United States v. Harris*, 403 U.S. 573, 583, 91 S.Ct. 2075, 2083, 29 L.Ed.2d 723 (1971)).

We have found no reported Minnesota cases upholding warrants based on informants' statements against interest where there has not been some corroboration or other indicium of reliability. *See State v. Yahnke*, 336 N.W.2d 299, 300 (Minn.1983) (unspecified corroboration and possible first-time citizen informants); *Wiberg*, 296 N.W.2d at 394, 396 (police officer received gun from unwitting informant in box with stock number from burglarized company); *McCloskey*, 453 N.W.2d at 703–04 (informant voluntarily came forward, admitted purchasing drugs from defendant, gave credible reason for seeking to remain confidential, and minor details were corroborated); *Hanson*, 344 N.W.2d at 423–24 (admitted accomplice identified by name in warrant). The case law could thus be interpreted to hold that a statement against interest establishes reliability only when combined with another factor, such as corroboration or coming forward voluntarily. *See State v. Meizo*, 297 N.W.2d 126, 127 (Minn.1980) (finding "deficient on its face" affidavit that stated only that four informants had admitted purchasing marijuana from defendant); *Wiberg*, 296 N.W.2d at 396 (concluding that informant's veracity was established by a declaration against penal interest coupled with partial corroboration). *But cf. State v. Bonynge*, 450 N.W.2d 331, 333, 336 (Minn.App.1990) (upholding, with little explanation, finding of probable cause where "confidential reliable informant" stated that he had, on several occasions, viewed film that violated child pornography and bestiality statutes at defendant's residence), *review denied* (Minn. Feb. 21, 1990). We need not decide this issue here because other deficiencies in the affidavit, when coupled with reliability information that is tenuous at best,

render the warrant application insufficient to establish probable cause.

### C. Time-place nexus

"Probable cause to search exists if it is established [that] certain identifiable objects * * * may probably be found at the present time." *Jannetta*, 355 N.W.2d at 193. The court must make a common-sense determination based on "practical considerations of everyday life" and the individual circumstances of each case. *Id.* (quoting *Brinegar v. United States*, 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879 (1949)).

■■■ In general, a single incident of criminal activity, such as a sale of contraband, "will support a finding of probable cause only for a few days at best." *State v. Cavegn*, 356 N.W.2d 671, 673 (Minn.1984) (quoting 1 LaFave, *Search & Seizure* § 3.7(a) at 684 (1978)). But a court

cannot ignore the fact that in cases involving controlled purchases by informants, police often must wait a number of days before obtaining and executing a warrant if they are to avoid compromising the informant.

*Id.* at 674.

The likelihood that the evidence sought is still in place is a function not simply of watch and calendar but of variables that do not punch a clock: the character of the crime (chance encounter in the night or regenerating conspiracy?), of the criminal (nomadic or entrenched?), of the thing to be seized (perishable and easily transferable or of enduring utility to its holder?), of the place to be searched (mere criminal forum of convenience or secure operational base?), etc.

*State v. Yaritz*, 287 N.W.2d 13, 16–17 (Minn. 1979) (quoting *Andresen v. State*, 24 Md. App. 128, 331 A.2d 78, 106 (1975), *aff'd Andresen v. Maryland*, 427 U.S. 463, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976)). Minnesota courts have concentrated primarily on whether there is an indication of ongoing criminal activity and on the nature of the items sought. *See Jannetta*, 355 N.W.2d at 193–94 (listing considerations including indication of ongoing criminal activity and whether property is innocuous or inherently

incriminating, easily disposable or transferable, or of enduring value to possessor); *Cavegn,* 356 N.W.2d at 674 (upholding affidavit based on information suggesting that defendant's narcotics dealing was continuing business rather than isolated incident); *accord, Yaritz,* 287 N.W.2d at 17; *State v. Velishek,* 410 N.W.2d 893, 896 (Minn.App.1987) (upholding six-week delay where defendants were alleged to be growing marijuana in basement greenhouse).

We have found no Minnesota case law addressing the timing issue in relation to a search of a location other than a suspect's home or car. *Cf. State v. Sherwood,* 352 N.W.2d 831, 833 (Minn.App.1984) (noting permanency of residence as factor supporting probable cause to search for shoplifted items).

## II. Application in the Instant Case

Ward identifies two defects in the warrant application: (1) the absence of any information other than a possible statement against interest regarding the credibility or reliability of the informant and (2) the absence of any link between Ward and the hotel room on any day other than July 3, or between Ward and a drug transaction at any time. Both contentions have merit.

As noted, it is questionable whether a statement against interest, standing alone, can render an informant credible. The purchase of marijuana places the informant beyond the scope of the first-time citizen informer rule. *See McCloskey,* 453 N.W.2d at 703. The marijuana corroborates the informant's claim of having made a drug purchase but itself provides no link to Ward or to room 176 of the Best Western Garden Inn, and the affidavit provides no other corroboration. The district court presumed that, if the informant had given reliable information in the past, the affidavit would have said so, and, as we have noted, the magistrate would not have been entitled to assume otherwise under precedent. *See Gabbert,* 411 N.W.2d at 212.

From the language of the affidavit, it is impossible to tell with any certainty whether (1) the informant obtained the marijuana in a controlled buy, (2) the informant came forward voluntarily, or (3) the informant was a "stool pigeon" attempting to implicate others for his own benefit. Indeed, because "controlled purchase" is an accepted term of art, the most logical assumption is that this was *not* a controlled purchase because an experienced drug enforcement officer would have identified it as such in the affidavit. The affidavit as written is therefore susceptible of at least two reasonable interpretations, one of which, the "stool pigeon" scenario, would not supply probable cause, and the affidavit provides no basis for favoring one over the other. We conclude that this "vague and uncertain information," *Jannetta,* 355 N.W.2d at 193, does not supply "sufficient underlying facts so that the magistrate may draw his own conclusions" as to the reliability of the informant. *Hanson,* 344 N.W.2d at 423 (quoting Minnesota Judge's Criminal Benchbook, 1–4).

As to the issue of an "object-place nexus," *see Kahn,* 555 N.W.2d at 18–19, we hardly need the Internet lodging industry data cited in Ward's brief to arrive at a conclusion that a magistrate may not, consistent with common sense, simply presume a suspect's continuing occupancy of a hotel room after 72 hours. If an affidavit indicates that an informant obtained contraband from a hotel guest,[2] in the absence of additional information, the most likely conclusion is that the possessor is "nomadic" rather than "entrenched" and that the hotel room is a "mere criminal forum of convenience" rather than a "secure operational base." *See Yaritz,* 287 N.W.2d at 16–17 (quoting *Andresen,* 331 A.2d at 106). But while it is far less likely that a suspect will continue to occupy a hotel

---

2. We note that the affidavit in this case states only that the informant "obtained" marijuana from the room; it does not aver that the tenant of the room sold marijuana to the informant. On the face of the affidavit, the marijuana could have belonged to a hotel employee. Indeed, at the omnibus hearing, Ward's counsel articulated a suspicion that the informant was another occupant of the room, who was both a marijuana user and a practiced "stool pigeon." The affidavit as written does not foreclose the possibility that the marijuana came from the informant's own supply.

room, as compared with a permanent residence, after a period of days, it is significantly easier for police to verify.

We conclude that in order to support a warrant to search a hotel room, the affidavit must provide some indication that the room is still occupied by a person who was present at the time of the incident that gave rise to probable cause. If the affidavit suggests that the suspect is the tenant or his invitee, this might be accomplished by a simple averment that the room remains registered in the same name. We believe that allowing a magistrate to infer continued occupancy from a silent affidavit would create an unacceptable risk of invasion of the constitutionally protected privacy of innocent subsequent tenants.

The district court relied largely on the maxim that reviewing courts should defer in "doubtful or marginal cases." *See Wiley*, 366 N.W.2d at 268. In *McCloskey*, a supreme court case decided on this ground, an informant walked, unprompted, to the police station and expressed a concern that the defendant, from whom the informant admitted purchasing marijuana, had been selling drugs to juveniles. *McCloskey*, 453 N.W.2d at 701. The informant refused to identify himself or herself for fear of retribution but kept a promise to return the next day and point out the defendant's house. *Id.* Police verified that the address and the phone number the informant provided belonged to the defendant and that the defendant had a criminal record. *Id.* at 701–02. The supreme court upheld the finding of probable cause based on the totality of the circumstances. *Id.* at 704.

The affidavit in this case provides significantly less information than the "doubtful or marginal" one in *McCloskey*. As Ward argues, it more closely resembles the affidavit found "deficient on its face" in *Meizo*, which simply gave the defendant's name and address and stated that, during a three-day period, four confidential informants made claims that they purchased drugs at unspecified times from the defendant. *Meizo*, 297 N.W.2d at 127. The affidavit in this case is more specific than the *Meizo* affidavit in that it places drugs in the room within 72 hours of the warrant application, but the transient nature of hotel guests significantly weakens this factor.

As the district court noted, the rationale for the rule of deference in marginal cases is that

> the exclusionary rule is directed at police misconduct. Here the police officer acted in good faith and did his best to comply with the Fourth Amendment requirements by going to a magistrate and relying on the magistrate to make a determination of probable cause. Applying the exclusionary rule in such a case would not deter police misconduct but would punish good police conduct.

*State v. Buchholtz*, 295 N.W.2d 629, 632 (Minn.1980). But the rule of deference, if applied blindly, can also allow for indefinite expansion of the limit that defines the marginal case. In this case, Officer Rauenhorst could easily have produced an almost certainly valid affidavit by (1) stating that the informant obtained marijuana from the tenant of room 176 in a controlled purchase, and (2) stating that room 176 was registered to Ward at the time of the purchase as well as on July 3. We conclude that upholding the warrant in this case would not reward "good police conduct."

The state urges this court to reconsider its decision not to adopt the federal exception to the exclusionary rule for evidence seized in good faith pursuant to a warrant later found invalid. *See, e.g., Kahn*, 555 N.W.2d at 20. The state did not argue this issue in the district court. *See Roby v. State*, 547 N.W.2d 354, 357 (Minn.1996) (stating that this court generally does not address issues not raised before district court, including issues of constitutional criminal procedure). In any event, we are not in position to overturn established supreme court precedent. *See State v. Zanter*, 535 N.W.2d 624, 634 (Minn. 1995) (declining to adopt good faith exception based on Minnesota Constitution); *Minnesota State Patrol Troopers Ass'n ex rel. Pince v. State, Dep't of Pub. Safety*, 437 N.W.2d 670, 676 (Minn.App.1989) (stating that adopting exception in absence of supreme court action is outside province of this court), *review denied* (Minn. May 24, 1989).

## DECISION

Because the affidavit in support of the search warrant fails to establish the reliability of the confidential informant or any link between Ward and the drug transaction other than his occupancy, possibly as long as four days later, of the room in which the transaction took place, it does not provide sufficient probable cause to support issuance of the warrant. All evidence obtained from Ward's hotel room must therefore be suppressed, and because that evidence provided the sole basis for Ward's conviction, the conviction must be reversed.

**Reversed.**