*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1533**

State of Minnesota,
Respondent,

vs.

Ronald Keith Halverson,
Appellant.

**Filed September 14, 2015
Affirmed
Rodenberg, Judge**

Pine County District Court
File No. 58-CR-12-670

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Reese Frederickson, Pine County Attorney, Michelle R. Skubitz, Assistant County
Attorney, Pine City, Minnesota (for respondent)

Cathryn Middlebrook Chief Appellate Public Defender, Mark D. Nyvold, Special
Assistant Public Defender, St. Paul, Minnesota (for appellant)

　　　　Considered and decided by Rodenberg, Presiding Judge; Connolly, Judge; and

Reyes, Judge.

**U N P U B L I S H E D   O P I N I O N**

**RODENBERG**, Judge

　　　　Appellant Ronald Keith Halverson challenges the denial of his motion to suppress

evidence after his controlled-substance conviction.  He argues that the warrant to search

his residence was not supported by probable cause because it relied exclusively on information supplied by an unreliable informant. Because the issuing judge had a substantial basis to conclude that probable cause supported the search warrant, we affirm.

## FACTS

On October 2, 2012, Justin Halverson, appellant's son, was stopped for speeding in South Dakota. The South Dakota Highway Patrol officer noticed that Justin appeared nervous. Justin declined the officer's request to search his vehicle. The officer was accompanied by a drug-detection dog, and the officer had the dog sniff the exterior of Justin's vehicle. The dog alerted to the presence of drugs in the trunk/wheel well area of the vehicle. The officer then searched the trunk and found 77 pounds of marijuana. Justin was arrested. He agreed to speak with an agent of the Drug Enforcement Administration (DEA).

Justin spoke with DEA Agent Roger Hanzlik. He admitted that he was delivering marijuana to appellant at appellant's residence in Willow River, Minnesota. Justin stated that he was returning from Arizona where he had picked up marijuana for appellant, as he had done on several earlier occasions. When in Arizona, Justin would meet with an individual who provided the marijuana appellant ordered, the marijuana would be given to Justin, and he would then transport the marijuana back to Minnesota. Justin would deliver the marijuana to appellant, who, in turn, paid him for the marijuana and delivery. Appellant then sold the marijuana in Minnesota and surrounding states.

After interviewing Justin, Agent Hanzlik contacted Investigator Andrew Abrahamson of the Pine County Sheriff's Office and the East Central Drug and Violent

Offender Task Force and explained that he was working with a cooperating defendant. Investigator Abrahamson spoke with Justin over the telephone, and Justin explained how he transported marijuana for appellant. Justin stated that appellant paid him one hundred dollars for each pound of marijuana transported, that he had transported several hundred pounds of marijuana to appellant's residence over the past five months, and that he expected to be paid $7,700 for the 77 pounds of marijuana he was presently transporting. Justin also explained where appellant's home was located, what was located at the end of the driveway, described what appellant looked like, and stated that appellant had heat-sealing bags, drug paraphernalia, and large amounts of cash at his home. Justin was aware that providing false information would worsen his legal predicament.

Investigator Abrahamson surveilled appellant's residence after his phone conversation with Justin. He saw a white Ford F-250 truck leave the residence. Within five minutes of seeing the truck leave, Investigator Abrahamson received a phone call from a DEA agent who was with Justin stating that appellant had sent Justin a text message advising Justin that appellant was going to a bar for dinner. Justin told the agent that appellant would be driving a white Ford F-250 truck.

At approximately 8:30 p.m., and supervised by a DEA agent, Justin placed a recorded phone call to appellant. Justin told appellant that he was in Sioux Falls, South Dakota, and that his travel was delayed due to a car accident on the interstate. Justin said that he would not be at appellant's residence until around 1:00 p.m. on October 3. Appellant told Justin to relax and not worry about the delay, to "do what it takes," that

3

Justin was "doing all the work anyways," and that Justin knew where the key was hidden in the event that appellant was not home when Justin arrived.

Based on the information obtained from Justin, Investigator Abrahamson applied for and received a warrant to search appellant's residence. The DEA kept three pounds of the marijuana as evidence. On October 3, 2012, Justin was wired for audio recording and followed to appellant's Willow River residence; Investigator Abrahamson monitored the audio. When Justin arrived at appellant's residence, Investigator Abrahamson could hear the sounds of Justin and appellant unloading the marijuana from Justin's vehicle. Justin explained to appellant that three pounds of marijuana were missing because a friend of his was going to sell the marijuana in the twin cities. Justin and appellant discussed payment for the marijuana delivery, and appellant agreed to pay Justin $5,000. Justin left the residence and met law-enforcement officers at a prearranged location. Justin was searched, and the $5,000 was seized. Justin told law enforcement that appellant had $25,000 in a kitchen drawer and that the marijuana was placed in the laundry room of appellant's residence.

The search warrant was then executed at the residence while Investigator Abrahamson met with Justin. In appellant's laundry room area, officers found three green U.S. Army bags containing approximately 70 pounds of marijuana. These were the same bags Justin had used to transport the marijuana to appellant's residence. Officers also seized $25,000 in cash and numerous cell phones. Appellant was arrested.

The state charged appellant with one count of second-degree sale of marijuana, in violation of Minn. Stat. § 152.022, subd. 1(4) (2012), and one count of third-degree

4

possession of marijuana, in violation of Minn. Stat. § 152.023, subds. 2(a)(5), 3(a) (2012).

Appellant moved both to suppress the evidence seized from his residence and to dismiss the second-degree sale charge. Following a *Rasmussen* hearing, the district court denied appellant's motions. The district court determined that sufficient probable cause supported both the search warrant and the second-degree sale charge.

The state agreed to dismiss the second-degree sale charge, and appellant agreed to a bench trial under Minn. R. Crim. P. 26.01, subd. 2., on the third-degree possession charge, with the evidence submitted by way of documents stipulated to be admissible. *See Dereje v. State*, 837 N.W.2d 714, 720 (Minn. 2013) (holding that "the submission of documentary evidence presenting contradictory versions of events" is a bench trial under Minn. R. Crim. P. 26.01, subd. 2, and not a stipulated-facts trial under 26.01, subd. 3). The district court found appellant guilty of third-degree possession of marijuana. This appeal followed.

## D E C I S I O N

Appellant challenges the district court's denial of his motion to suppress the evidence seized in the search of his residence. He asserts that the search warrant was not supported by probable cause.

The United States and Minnesota Constitutions protect citizens from unreasonable searches and seizures and provide that no warrant shall issue without a showing of probable cause. U.S. Const. amend IV; Minn. Const. art. I, § 10. "A search warrant is supported by probable cause if there is a fair probability that contraband or evidence of a crime will be found in a particular place." *State v. Fort*, 768 N.W.2d 335, 342 (Minn. 2009) (quotation omitted). In determining whether probable cause exists, the issuing judge

5

considers the "totality of the circumstances" and makes a "practical, commonsense decision" based on "all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information." *State v. Zanter*, 535 N.W.2d 624, 633 (Minn. 1995) (quotation omitted).

We afford great deference to the district court's probable cause determination in issuing a search warrant. *State v. Rochefort*, 631 N.W.2d 802, 804 (Minn. 2001). When reviewing the probable cause determination, we consider only "whether the judge issuing the warrant had a substantial basis for concluding that probable cause existed," *State v. Jenkins*, 782 N.W.2d 211, 222-23 (Minn. 2010) (quotation omitted), and, under the totality of the circumstances, we are "careful not to review each component of the affidavit in isolation," *State v. Wiley*, 366 N.W.2d 265, 268 (Minn. 1985). Searches conducted pursuant to a warrant are strongly preferred, *Rochefort*, 631 N.W.2d at 804, and "doubtful or marginal cases should be largely determined by the deference to be accorded to warrants," *Wiley*, 366 N.W.2d at 268 (quotations omitted).

Appellant argues that the warrant application did not provide the issuing judge with a substantial basis to believe that the informant was reliable and credible. He asserts that "Justin was a stool pigeon whose self-serving statements were not only not entitled to a presumption of reliability, they made him presumptively unreliable."

The warrant application was based primarily on information supplied by Justin. "Where a probable cause determination is based on an informant's tip, the informant's veracity and the basis of his or her knowledge are considerations under the totality test."

*State v. Ward*, 580 N.W.2d 67, 71 (Minn. App. 1998). Appellant does not challenge the basis of Justin's knowledge, but he argues that Justin was not sufficiently reliable.

We consider six factors when evaluating the reliability of an informant:

> (1) a first-time citizen informant is presumably reliable; (2) an informant who has given reliable information in the past is likely also currently reliable; (3) an informant's reliability can be established if the police can corroborate the information; (4) the informant is presumably more reliable if the informant voluntarily comes forward; (5) in narcotics cases, "controlled purchase" is a term of art that indicates reliability; and (6) an informant is minimally more reliable if the informant makes a statement against the informant's interests.

*State v. Ross*, 676 N.W.2d 301, 304 (Minn. App. 2004) (citing *Ward*, 580 N.W.2d at 71). The majority of these factors do not apply here. Justin was not a first-time citizen informant, and there is no indication in the application that he had given reliable information in the past, or that he voluntarily came forward. The warrant was not issued based on a "controlled purchase." The application does, however, contain statements against Justin's personal penal interest and corroboration of the information he had provided to law enforcement.

The warrant application includes extensive and detailed information about Justin's involvement in appellant's drug operation, and includes multiple incriminating statements made by Justin. In making its probable cause determination, the district court considered Justin's statements against his penal interest. Appellant contends that these statements do not support the determination that probable cause existed to issue the search warrant. He characterizes Justin as a "stool pigeon" who had "an enormous motive to fabricate

7

information to obtain leniency for himself" after approximately 77 pounds of marijuana were found in his possession.

> [T]he fact that an informant makes a statement against his or her own penal interest is of some minimal relevance in a totality-of-the-circumstances analysis. . . . But courts remain reluctant to believe the typical "stool pigeon" who is arrested and who, at the suggestion of police, agrees to cooperate and name names in order to curry favor with the police.

*Ward*, 580 N.W.2d at 71-72 (quotation omitted).

Here, Justin was surely attempting to implicate appellant for some personal benefit (not precisely revealed by this record) and to "curry favor with the police." *Id.* After being caught with a substantial amount of marijuana, he told law enforcement about his role in the drug-trafficking operation. If the information he gave police concerning appellant turned out to be false, Justin's legal predicament would have worsened. In conducting its probable cause analysis, the district court relied in part on Justin's knowledge that, if he provided false information to law enforcement, matters would be worse for him. Caselaw discussing whether an informant's knowledge of consequences for providing false information can be used as an indicator of reliability is sparse and appears generally in the context of an informant who comes forward voluntarily. *See State v. Lindquist*, 295 Minn. 398, 400, 205 N.W.2d 333, 335 (1973) ("One who voluntarily comes forward and identifies herself is more likely to be telling the truth because she presumably knows that the police could arrest her for making a false report."). Appellant argues that "Justin being aware that if he lied things would get worse for him" did not

8

"provide a meaningful indicator that he was being truthful, because people lie all the time thinking they can get away with it."

We agree with the district court that Justin's statements to law enforcement were sufficiently against his legal interest as to support a finding of reliability. *See State v. Siegfried*, 274 N.W.2d 113, 115 (Minn. 1978) (providing that "circumstances strongly suggest" that information from an informant is reliable where "the police are able to show that the tip involves an admission against the informer's interest" and "where it is clear from all the circumstances that the informer knows things will be worse for him if the tip turns out to be false"). His statements to law enforcement incriminated Justin as a significant actor in an interstate drug-smuggling operation.

Caselaw provides that an informant's statement against his interest "establishes reliability only when combined with another factor, such as corroboration." *See Ward*, 580 N.W.2d at 72; *see also State v. McCloskey*, 453 N.W.2d 700, 704 (Minn. 1990) (concluding that the "mere fact that the statement was in some way against the informant's interest is of some minimal relevance in a totality-of-the-circumstances analysis of probable cause"). Here, Justin's statements against his interest were combined with corroboration of the information he provided to law enforcement. The warrant application identifies corroboration of the information Justin provided, including what was located at the end of the driveway, the description of appellant, and the towns around appellant's residence. Importantly, the application also states that the investigator surveilling appellant's residence saw appellant leave in a white Ford F-250 truck only minutes before

receiving information that Justin had been told by text message that appellant would be leaving his residence in such a truck.

Moreover, and providing additional corroboration, the warrant application details the October 2 recorded telephone call between Justin and appellant. In this conversation, Justin told appellant that he had been delayed in traffic in South Dakota and would not arrive at appellant's residence until around 1:00 p.m. the next day. In response, and seemingly aware of Justin's travels, appellant told Justin to "relax, you're doing all the work anyways and I will see you tomorrow." Appellant argues that these facts do not assist in establishing Justin's reliability. But, this conversation gives credence to Justin's information and supports the probable cause determination of the issuing judge. *See State v. Holiday*, 749 N.W.2d 833, 841 (Minn. App. 2008) ("Even corroboration of minor details lends credence to an informant's tip and is relevant to the probable-cause determination.").

The district court also determined that the warrant was supported by probable cause because the information contained in the warrant application implicated someone the informant would be expected to protect. Appellant argues that "Justin pointing the finger at his father did little to indicate trustworthiness, since the agents Justin was telling his story to had no idea whether Justin and his father were close or estranged."

An informant's reliability can be established "where the tip implicates someone the informer would be expected to protect." *Siegfried*, 274 N.W.2d at 115. While law enforcement may not have been apprised of the status of the relationship between Justin and appellant, the fact that Justin implicated his father was a proper consideration in making the probable cause determination. The father-son relationship provides another

10

circumstance that reinforces the district court's determination that probable cause supported the issuance of the warrant.

The search warrant here was issued before the controlled delivery of the marijuana.[1] In the warrant application, Agent Abrahamson stated that he had "good reason to believe" that "[m]arijuana and . . . scales, drug paraphernalia, drug notes and other items used for the distribution or consumption of controlled substance" and "U.S. currency and other monies" would be found at appellant's residence. The warrant application briefly mentions that Justin had "agreed to try and arrange a controlled delivery to [appellant]," and states that Justin had "seen heat sealing bags and machines around [appellant's] house, large amounts of cash, [and] paraphernalia at the house" and had "delivered several hundred pounds of marijuana to [appellant's] residence over the past five months."

In sum, when considering the totality of the circumstances set forth in the warrant application and the circumstances supporting Justin's reliability as an informant, there

---

[1] In his motion to suppress, appellant argued that at the time the application for the search warrant was presented to the issuing judge, there was no specific allegation that illegal drugs were at appellant's residence. In its order denying the motion to dismiss, the district court analyzed appellant's argument as if an anticipatory search warrant had been issued. "An anticipatory warrant is a warrant based upon an affidavit showing probable cause that at some future time (but not presently) certain evidence of crime will be located at a specific residence." *U.S. v. Grubbs*, 547 U.S. 90, 94, 126 S. Ct. 1494, 1498 (2006) (quotation omitted). "Most anticipatory warrants subject their execution to some condition precedent . . . – a so-called 'triggering condition.'" *Id.* The search warrant here contains no such condition precedent. But appellant does not challenge the anticipatory nature of the warrant as an issue on appeal. As such, we have no occasion to address the issue. *State v. Butcher*, 563 N.W.2d 776, 780 (Minn. App. 1997), *review denied* (Minn. Aug. 5, 1997). As discussed, sufficient information was provided in the warrant application to support the issuing judge's finding that contraband would be found in appellant's residence.

was sufficient probable cause to support the issuance of the search warrant.  The district court, therefore, did not err in denying appellant's motion to suppress.

**Affirmed.**