*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A15-1708**

State of Minnesota,
Respondent,

vs.

David Michael Kepner,
Appellant.

**Filed August 22, 2016**
**Affirmed**
**Hooten, Judge**

Scott County District Court
File No. 70-CR-14-8294

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Ronald Hocevar, Scott County Attorney, Todd P. Zettler, Assistant County Attorney, Shakopee, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Peterson, Presiding Judge; Hooten, Judge; and Muehlberg, Judge.*

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**HOOTEN**, Judge

On appeal from his conviction of first-degree possession of a controlled substance, appellant argues that his conviction must be reversed because the district court erred by denying his motion to suppress evidence discovered after a search of his business and person pursuant to a search warrant. We affirm.

**FACTS**

In May 2014, Southwest Metro Drug Task Force Agent Krautkremer applied for a search warrant, providing the following information in his supporting affidavit. Shortly before noon on May 13, 2014, Scott County Deputy Aszmann observed a silver Volkswagen Jetta parked in front of Absolute Towing/Smash Auto Body (Absolute Towing). Deputy Aszmann was familiar with Absolute Towing and had executed a search warrant at the business in September 2012, resulting in the recovery of methamphetamine. Approximately ten minutes after observing the Jetta at Absolute Towing, Deputy Aszmann saw the same vehicle and stopped it for an illegal window tint. The driver of the Jetta told Deputy Aszmann that he and his passenger were coming from the auto body shop. During the traffic stop, Deputy Aszmann recovered approximately 80 grams of suspected methamphetamine from the driver. The driver told Deputy Aszmann that his passenger had also placed methamphetamine in her vagina. After being advised of her *Miranda* rights, the passenger admitted that she had concealed methamphetamine in her vagina and turned over approximately 17.6 grams of methamphetamine. The substances recovered from the driver and the passenger field tested positive for methamphetamine.

2

That same day, the driver spoke with Deputy Aszmann and Agent Krautkremer.[1] The driver told the officers that he and the passenger had picked up methamphetamine at a business matching the description of Absolute Towing within the previous 24 hours. The driver stated that a man in his late 40s or early 50s with gray hair and a beard had provided them with the methamphetamine. Deputy Aszmann was familiar with appellant David Michael Kepner and knew that the driver's description of the man who had provided the methamphetamine matched that of Kepner. Deputy Aszmann showed the driver Kepner's Department of Vehicle Services (DVS) photograph, and the driver identified Kepner as the individual who had provided the methamphetamine. The driver stated that he saw approximately one pound of methamphetamine in a drawer in Kepner's office. The driver said that the passenger had $560 when they arrived at Absolute Towing, but only $20 when they left. The driver stated that he had not made any stops after leaving Absolute Towing before being pulled over by Deputy Aszmann.

The district court issued a search warrant for Absolute Towing and Kepner, and law enforcement discovered approximately 77.2 grams of methamphetamine upon executing the search warrant. Kepner was charged with one count of first-degree possession of a controlled substance. Kepner moved to suppress the evidence discovered as a result of the search and to dismiss, arguing that the search warrant was not supported by probable cause. The district court denied the motion. Pursuant to Minn. R. Crim. P. 26.01, subd. 4, Kepner

---

[1] The affidavit in support of the search warrant identifies the driver as well as a cooperating defendant. As the district court noted, however, the cooperating defendant is clearly the driver.

waived his right to trial and stipulated to the state's case in order to obtain appellate review of the district court's pretrial ruling. The district court found Kepner guilty of the charge and sentenced him to 76 months. This appeal followed.

**D E C I S I O N**

Kepner argues that his conviction must be reversed because the district court erred by concluding that the search warrant application established probable cause for issuing the search warrant. The United States Constitution and the Minnesota Constitution require that a search warrant be supported by probable cause. U.S. Const. amend. IV; Minn. Const. art. I, § 10; *see* Minn. Stat. § 626.08 (2012) ("A search warrant cannot be issued but upon probable cause . . . ."). Probable cause to issue a search warrant exists when "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *State v. Wiley*, 366 N.W.2d 265, 268 (Minn. 1985) (quotation omitted). "[W]hen reviewing a district court's probable cause determination made in connection with the issuance of a search warrant, an appellate court should afford the district court's determination great deference." *State v. Rochefort*, 631 N.W.2d 802, 804 (Minn. 2001). "An appellate court reviews a district court's decision to issue a warrant only to consider whether the issuing judge had a substantial basis for concluding that probable cause existed." *Id.* Appellate courts use a totality of the circumstances test to determine whether the issuing judge had a substantial basis for finding probable cause. *State v. Holiday*, 749 N.W.2d 833, 839 (Minn. App. 2008).

"In determining probable cause, the [judge] must consider the veracity and basis of knowledge of persons supplying hearsay information." *State v. Souto*, 578 N.W.2d 744,

4

750 (Minn. 1998) (quotations omitted). Six factors aid in evaluating the credibility and reliability of an informant:

> (1) A first-time citizen informant is presumably reliable; (2) an informant who has given reliable information in the past is likely also currently reliable; (3) an informant's reliability can be established if the police can corroborate the information; (4) the informant is presumably more reliable if the informant voluntarily comes forward; (5) in narcotics cases, "controlled purchase" is a term of art that indicates reliability; and (6) an informant is minimally more reliable if the informant makes a statement against the informant's interests.

*State v. Ross*, 676 N.W.2d 301, 304 (Minn. App. 2004).

The record shows that the first, fourth, and fifth factors provide no or minimal assistance in the evaluation of the credibility and reliability of the informant. Because law enforcement had just discovered that the driver was in possession of approximately 80 grams of methamphetamine when he provided information regarding the criminal acts of his passenger and Kepner, the driver here was more akin to a "stool pigeon" or a member of "the criminal underworld" than a first-time citizen informant. *See State v. Ward*, 580 N.W.2d 67, 71–72 (Minn. App. 1998) ("[C]ourts remain reluctant to believe the typical 'stool pigeon' who is arrested and who, at the suggestion of the police, agrees to cooperate and name names in order to curry favor with the police." (alteration omitted) (quotation omitted)). While there is no indication in the record that the driver was offered any deal in exchange for his information, it is clear that the driver provided the information after Deputy Aszmann discovered approximately 80 grams of methamphetamine in the driver's vehicle. Given the circumstances of the driver's statement, it is unclear to what extent he

voluntarily provided the information. Moreover, no controlled buy occurred here that would demonstrate the driver's credibility.

With regard to the second factor, the affidavit in support of the search warrant provides that the driver "has provided reliable information to law enforcement in the past which has resulted in an arrest." It is unclear whether this statement refers to the fact that the driver told Deputy Aszmann that the passenger had concealed methamphetamine in her vagina or to a previous incident. Whether or not this statement refers to the information the driver provided regarding the passenger, this factor provides relatively minimal support regarding the driver's reliability, as the affidavit establishes that the driver provided information that led to one arrest, but does not establish that the driver had provided reliable information over a period of time to law enforcement.

With regard to the third factor, however, Deputy Aszmann was able to corroborate a number of facts provided by the driver. First, Deputy Aszmann was able to corroborate the driver's information regarding the fact that the passenger had placed methamphetamine in her vagina because the passenger removed the methamphetamine from her vagina. Second, Deputy Aszmann was able to corroborate that the driver and the passenger had just come from Absolute Towing, where they obtained the methamphetamine, because Deputy Aszmann had personally observed the Jetta at Absolute Towing approximately ten minutes before he stopped the vehicle. Third, based on his knowledge of Kepner, Deputy Aszmann knew that the driver's description of the man who sold him methamphetamine matched that of Kepner and, using Kepner's DVS photograph, was able to confirm that Kepner was the man who had sold the methamphetamine. Finally, in addition to the

6

driver's information regarding Kepner's recent possession of methamphetamine, Deputy Aszmann was familiar with both Absolute Towing and Kepner and had executed a search warrant on Absolute Towing 20 months previously, which resulted in the recovery of methamphetamine. This corroborating information provides substantial indication of the driver's reliability.

Additionally, the driver admitted that he had obtained methamphetamine from Kepner, a statement against his interest. The fact that an informant made a statement against his or her own interest "is of some minimal relevance in a totality-of-the-circumstances analysis of probable cause." *State v. McCloskey*, 453 N.W.2d 700, 704 (Minn. 1990). The driver's admission therefore provides minimal indication of his reliability.

Given the substantial corroboration of the information provided by the driver as well as the fact that the driver made a statement against his interest, the district court did not err in finding that the driver was credible. We conclude that the district court did not err in concluding that the information provided by the driver, combined with independent corroboration of law enforcement, was sufficient to conclude that, under the totality of the circumstances, a fair probability existed that evidence of a crime would be found in Absolute Towing or on Kepner. Therefore, the district court properly denied Kepner's motion to suppress.

**Affirmed.**