*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1377**

State of Minnesota,
Respondent,

vs.

Kunta Kinta Viverette,
Appellant.

**Filed June 22, 2015
Affirmed
Kirk, Judge**

Hennepin County District Court
File No. 27-CR-13-24720

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Linda M. Freyer, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Sara L. Martin, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Connolly, Presiding Judge; Kirk, Judge; and Smith, Judge.

**KIRK**, Judge

In this appeal following his conviction of first-degree controlled substance possession, appellant challenges the search warrant and raises several arguments regarding the administration of his trial. We affirm.

## FACTS

On July 30, 2013, law enforcement executed a search warrant based on information from a confidential reliable informant (CRI). Officers found appellant Kunta Kinta Viverette in the apartment's west bedroom and "eight large bags of suspected cocaine," cash, and documents in appellant's name in the west bedroom closet. They also found "two small bindles of suspected crack cocaine" in the pocket of men's sweatpants in the west bedroom.

Respondent State of Minnesota initially charged appellant with one count of first-degree controlled substance possession and one count of fifth-degree controlled substance possession, but dismissed the fifth-degree charge on the first day of trial. After the jury found him guilty of the first-degree charge, appellant moved for a judgment of acquittal or, in the alternative, to vacate the judgment and order a new trial. The district court denied appellant's motions. This appeal follows.

## D E C I S I O N

**I.     The district court did not err by denying appellant's motion to suppress.**

Appellant first argues that the district court erred by denying his motion to suppress because the search warrant did not establish probable cause. The United States

and Minnesota Constitutions protect citizens from unreasonable searches and seizures and provide that no warrant shall issue without a showing of probable cause. U.S. Const. amend. IV; Minn. Const. art. I, § 10. Generally, a search of a residence is valid only if a neutral and detached magistrate issues a warrant supported by probable cause. *See* Minn. Stat. § 626.08 (2012); *State v. Harris*, 589 N.W.2d 782, 787 (Minn. 1999). When reviewing whether a search warrant is supported by probable cause, this court gives "great deference to the issuing judge's finding of probable cause" and seeks only to "ensur[e] that the issuing judge had a substantial basis for concluding that probable cause existed." *State v. McGrath*, 706 N.W.2d 532, 539 (Minn. App. 2005), *review denied* (Minn. Feb. 22, 2006). In doing so, the reviewing court considers the totality of the circumstances. *State v. Jenkins*, 782 N.W.2d 211, 223 (Minn. 2010).

Hennepin County Sheriff's Deputy Jason Hughes applied for a search warrant for the apartment after receiving information from a CRI that appellant "was involved in trafficking large quantities of cocaine in the Minneapolis area." The CRI had observed appellant in possession of cocaine at the apartment and told Deputy Hughes that appellant "sells narcotics at all times of the day and night and does not follow a set schedule for these crimes." The CRI further explained that appellant was staying at the apartment with his girlfriend, whose last name was Hall. Deputy Hughes stated that officers had spoken with the apartment's management, who had seen appellant at the apartment complex in the past. The officers viewed a video showing someone matching appellant's description entering the building with the key fob for the specific apartment, which they also confirmed was occupied by Michelle Hall. Finally, Deputy Hughes checked

3

appellant's criminal history and learned that he had been "arrested in the past for narcotics crimes as well as weapons possession charges."

When a search warrant is based on an informant's tip, the supporting "affidavit must provide the magistrate with adequate information from which he can personally assess the informant's credibility." *State v. Siegfried*, 274 N.W.2d 113, 114 (Minn. 1978). The issuing judge must consider the informant's basis of knowledge and veracity. *State v. Souto*, 578 N.W.2d 744, 750 (Minn. 1998) (citing *Illinois v. Gates*, 462 U.S. 213, 238, 103 S. Ct. 2317, 2332 (1983)). But veracity and basis of knowledge are "closely intertwined issues" and are not "separate and independent requirements." *State v. Holiday*, 749 N.W.2d 833, 840 (Minn. App. 2008) (citing *Gates*, 462 U.S. at 230, 103 S. Ct. at 2328).

This court has set forth six factors for evaluating "the reliability of an informant who is confidential but not anonymous to police." *State v. Ward*, 580 N.W.2d 67, 71 (Minn. App. 1998). Under these factors, an informant is deemed reliable if the informant (1) is a first-time citizen informant not involved in the criminal underworld; (2) has previously given police correct information; (3) gives information sufficiently corroborated by police; (4) comes forward voluntarily to identify a suspect with no motive to falsify information; (5) participates in a "controlled purchase" in a narcotics case; or (6) makes a statement against his own penal interest. *Id.*

Under the second reliability factor, "an informant's reliability may be demonstrated where the informant has previously given police correct information, but the affidavit must explicitly state this to be the case." *Id.* Deputy Hughes's affidavit

4

stated that the CRI had "provided information to local law enforcement officers regarding narcotics traffickers . . . in the past" and had "provided information that ha[d] led to the seizure of large amounts of narcotics as well as weapons." An affidavit need not include specific details regarding the informant's past veracity and "a simple statement that the informant has been reliable in the past" is enough to establish the informant's reliability. *State v. Ross*, 676 N.W.2d 301, 304 (Minn. App. 2004). Because the affidavit states that the informant had been reliable in the past, the second reliability factor was met and there was sufficient evidence of the informant's reliability. *See id.*; *State v. Wiley*, 366 N.W.2d 265, 269 (Minn. 1985) (concluding that the affidavit's statement that the informant had "been used over several years successfully" provided sufficient evidence of the informant's reliability).

Contrary to appellant's assertion, law enforcement was not required to "conduct significant investigation to corroborate" the CRI's tip. *See Ward*, 580 N.W.2d at 71 (stating that police corroboration is only one way to establish reliability). But here, officers spoke to apartment management and viewed a surveillance video that corroborated appellant's presence at the apartment, and they confirmed that the apartment was occupied by Michelle Hall, as the informant had suggested. "[C]orroboration of even minor details can lend credence to the informant's information where the police know the identity of the informant." *Id.* (quotation omitted). In a totality-of-the-circumstances analysis, the "minimal corroboration" here, although unnecessary, supports the district court's finding of probable cause. *See State v. McCloskey*, 453

N.W.2d 700, 704 (Minn. 1990); *see also Wiley*, 366 N.W.2d at 269 (stating that even corroboration of non-key details can "lend credence to the informant's tip").

The affidavit also provides a sufficient basis of knowledge. "Recent personal observation of incriminating conduct has traditionally been the preferred basis for an informant's knowledge." *Wiley*, 366 N.W.2d at 269. The CRI observed appellant in possession of cocaine at the apartment and told Deputy Hughes that appellant "sells narcotics at all times of the day and night and does not follow a set schedule for these crimes." The CRI's tip was based on personal observation, and appellant provides no citation in support of his argument that the tip "was not sufficiently detailed." The informant was not required to purchase drugs from appellant to gain a sufficient basis of knowledge or reliability. *See Ward*, 580 N.W.2d at 71 (listing a controlled purchase as only one way to establish an informant's reliability).

Based on the totality of the circumstances, we conclude that the search-warrant application established the CRI's basis of knowledge and reliability. In addition, the application established "a fair probability that contraband or evidence of a crime" would be found in the apartment. *See Wiley*, 366 N.W.2d at 268 (quoting *Gates*, 462 U.S. at 238, 103 S. Ct. at 2332). Therefore, the issuing judge had a substantial basis to conclude that the search warrant was supported by probable cause, *see McGrath*, 706 N.W.2d at 539, and the district court did not err by denying appellant's motion to suppress.

Appellant also argues that the district court should have granted his motion to suppress because the search warrant did not support an unannounced entry. But appellant only argued below that the search warrant was not supported by probable cause and that a

6

*Franks* hearing was needed to assess the search warrant's validity. *See Franks v. Delaware*, 438 U.S. 154, 155-56, 98 S. Ct. 2674, 2676 (1978). Because appellant did not argue below that the unannounced entry was unlawful and the record was not sufficiently developed for our review, we decline to consider this issue on appeal. *See Roby v. State*, 547 N.W.2d 354, 357 (Minn. 1996) ("This court generally will not decide issues which were not raised before the district court, including constitutional questions of criminal procedure.").

**II.     The district court did not abuse its discretion by limiting appellant's questioning during voir dire.**

The United States and Minnesota Constitutions guarantee the right to a trial by an impartial jury. U.S. Const. amend. VI; Minn. Const. art. I, § 6. "This right includes the ability to conduct 'an adequate *voir dire* to identify unqualified jurors.'" *State v. Greer*, 635 N.W.2d 82, 87 (Minn. 2001) (quoting *Morgan v. Illinois*, 504 U.S. 719, 729, 112 S. Ct. 2222, 2230 (1992)). But district courts may restrict or prohibit repetitious, irrelevant, or improper questions. *Id.* (citing Minn. R. Crim. P. 26.02 cmt.). We review the district court's voir-dire decisions for an abuse of discretion. *Id.* "[I]t is an abuse of discretion for the [district] court to frustrate the purposes of voir dire by preventing discovery of bases for challenge or inhibiting a defendant's ability to make an informed exercise of peremptory challenges." *Id.*

At the start of voir dire, the district court told the prospective jurors that the state had the burden to prove appellant's guilt beyond a reasonable doubt. The district court also explained that appellant was presumed innocent and that the jury should not be

7

prejudiced against him due to his arrest or criminal charge. The district court then asked the prospective jurors whether they agreed that the defendant was presumed innocent, that the state had the burden to prove his guilt, and that they could apply the law as instructed by the district court. The jurors responded affirmatively to all three questions.

Appellant's attorney later had the following exchange with a potential juror:

> DEFENSE ATTORNEY: Do you think it's possible for someone to be falsely accused?
> PROSPECTIVE JUROR: Yes.
> DEFENSE ATTORNEY: And why do you think that is?
> PROSECUTOR: Objection, Your Honor. Improper voir dire.

The district court found the defense attorney's questioning to be "objectionable" because it (1) clouded the court's instruction regarding the presumption of innocence, (2) put forth the defense strategy that appellant had been falsely accused, and (3) asked "jurors to put themselves in the situation of being accused."

Appellant argues that the district court improperly prevented him from questioning jurors about their views toward law enforcement. *See State v. Ritter*, 719 N.W.2d 216, 221 (Minn. App. 2006) (holding that the district court abused its discretion by not allowing the defense to ask any questions about potential biases toward law enforcement). But the district court only prevented appellant from asking potential jurors about false accusations. As the district court found, appellant's questioning was similar to the questions in *State v. Owens*, where the defendant attempted to ask whether someone could be arrested and charged for a crime he did not commit and whether the potential jurors had ever been blamed for something they did not do. 373 N.W.2d 313,

8

315 (Minn. 1985). The supreme court concluded that the district court's disallowance of these questions did not prevent the defendant "from discovering bases for challenge for cause or gaining knowledge to enable an informed exercise of peremptory challenges" and that the district court did not abuse its discretion. *Id.* (quotation marks omitted).

As in *Owens*, the district court did not prevent appellant from discovering bases for challenge or from exercising informed peremptory challenges. The district court instructed the prospective jurors regarding the presumption of innocence and the burden of proof, *see id.*, and allowed appellant to ask other questions on voir dire regarding whether potential jurors felt comfortable in applying the presumption of innocence. The district court also allowed appellant to inquire about potential jurors' views toward law enforcement. Because the district court did not prevent appellant from discovering bases for challenge or exercising informed peremptory challenges, it did not abuse its discretion in prohibiting the challenged questioning. *See Greer*, 635 N.W.2d at 87.

**III.    The district court's refusal to allow appellant to introduce certain evidence regarding his alternative-perpetrator defense did not violate appellant's due-process rights.**

The district court allowed appellant to present an alternative-perpetrator defense at trial. Appellant testified that he did not have a place to live after being released from prison in April 2013. He stayed several places before T.E. told him that he could stay at a friend's apartment. Appellant started staying at the apartment around July 20. He testified that T.E. let him into the apartment and that he never had his own key. On July 29, 2013, appellant and his girlfriend fell asleep on the couch. At some point, T.E. arrived at the apartment and went into the main bedroom for about five minutes. T.E.

9

then told appellant that he and his girlfriend could stay in the bedroom. Officers found appellant and his girlfriend in that bedroom when executing the search warrant. Appellant testified that T.E. might have set him up.

Appellant argues that four of the district court's evidentiary decisions regarding his alternative-perpetrator defense violated his due-process rights. The due-process clauses in the United States and Minnesota Constitutions provide criminal defendants with the rights to be treated fairly and to present a complete defense. *State v. Richards*, 495 N.W.2d 187, 191 (Minn. 1992) (citing *California v. Trombetta*, 467 U.S. 479, 485, 104 S. Ct. 2528, 2532 (1984)). "Alternative perpetrator evidence is admissible if it has an inherent tendency to connect the alternative party with the commission of the crime." *State v. Jones*, 678 N.W.2d 1, 16 (Minn. 2004). The district court's decision to exclude evidence supporting the defendant's alternative-perpetrator theory violates due process if it "significantly undermines fundamental elements of the defendant's defense." *Id.* (quotation omitted). But, like all other types of exculpatory evidence, evidence supporting the alternative-perpetrator theory must be admissible under the ordinary rules of evidence. *Id.* "Evidentiary rulings rest within the sound discretion of the [district] court and will not be reversed absent a clear abuse of discretion." *State v. Amos*, 658 N.W.2d 201, 203 (Minn. 2003).

### A.     Nature of the Investigation

On cross-examination, appellant's attorney asked Deputy Hughes several questions about the "independent investigation" that he conducted after receiving information from the CRI. She also asked several questions about other techniques that

Deputy Hughes could have used, including dog sniffs, trash pulls, and controlled buys, and asked whether Deputy Hughes had witnessed high foot traffic or hand-to-hand transactions or found a drug-transaction ledger in the apartment. The district court sustained the prosecutor's objections to each question about other techniques on relevance grounds. The district court explained that these questions addressed the validity of the search warrant, an issue that had already been fully litigated, and were not helpful to the jury in determining whether appellant committed first-degree possession. The district court "direct[ed] the defense not to continue to ask a line of questioning regarding the support for the search warrant in this case."

Appellant argues that his questions about the "integrity and thoroughness of the investigation were certainly relevant to whether someone else committed this crime." But the district court only limited appellant's questions regarding the investigation *before* the issuance of the search warrant and allowed appellant to inquire about the investigation during the execution of the search warrant. Because the issuing judge had previously determined that the search warrant was supported by probable cause, the sufficiency of the investigation before the issuance of the search warrant was not an issue for the jury and was irrelevant to the jury's role in determining whether appellant possessed the drugs found during the search. *See* Minn. R. Evid. 401 ("'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."). The officers' actions to corroborate the CRI's tip did not make appellant's guilt or innocence more or less likely.

11

The district court did not abuse its discretion in limiting appellant's questioning regarding the investigation before the issuance of the search warrant. *See Amos*, 658 N.W.2d at 203. Even if it did, appellant cannot show that he was prejudiced by the district court's ruling. "When an error implicates a constitutional right, we will award a new trial unless the error is harmless beyond a reasonable doubt. An error is harmless beyond a reasonable doubt if the jury's verdict was surely unattributable to the error." *State v. Davis*, 820 N.W.2d 525, 533 (Minn. 2012) (citation and quotation omitted). The jury convicted appellant of first-degree possession even though he argued that he did not possess the drugs in the apartment, he had been set up by an alternative perpetrator, and the police officers conducted a sloppy and incompetent search. Given the strong evidence of appellant's guilt, evidence regarding the investigation before the issuance of the search warrant could not have altered the jury's verdict.

### B.    Reverse-*Spreigl* Evidence

In general, a defendant may "present evidence of other crimes, wrongs, or bad acts committed by the alleged alternative perpetrator in order to cast reasonable doubt upon the identification of the defendant as the person who committed the charged crime." *Jones*, 678 N.W.2d at 16. But this reverse-*Spreigl* evidence is only admissible if the defendant shows "(1) clear and convincing evidence that the alleged alternative perpetrator participated in the reverse-*Spreigl* incident; (2) that the reverse-*Spreigl* incident is relevant and material to [the] defendant's case; and (3) that the probative value of the evidence outweighs its potential for unfair prejudice." *Id.* at 16-17. Here, the district court denied appellant's motion to introduce T.E.'s two convictions of fifth-

degree controlled substance crime because appellant had not met the second and third elements.

On appeal, appellant only argues that the reverse-*Spreigl* evidence was relevant to the jury's determination of whether appellant committed the charged offense. Evidence that T.E. had previously been convicted of fifth-degree controlled substance crimes might have had some tendency to show that he possessed the cocaine found in the apartment. *See State v. Denison*, 607 N.W.2d 796, 801 (Minn. App. 2000), *review denied* (Minn. June 13, 2000). But, as the district court found, this evidence could only show that both T.E. and appellant constructively possessed the cocaine. T.E.'s prior convictions could not "negate the strong inference" that appellant constructively possessed the cocaine found in the bedroom where he was staying. *See id.*

In addition, evidence of prior convictions alone, without testimony regarding the underlying acts, generally cannot provide clear evidence that the convicted person committed the acts in question. *See State v. Wright*, 719 N.W.2d 910, 916 n.1 (Minn. 2006). Because appellant sought only to introduce evidence of T.E.'s prior convictions and did not show that T.E. committed the underlying offenses or that the offenses were material to appellant's possession of the cocaine, the district court did not abuse its discretion by denying appellant's motion to introduce reverse-*Spreigl* evidence.

## C.    Benefits to the Informant

Deputy Hughes testified on direct that "[a] reliable informant is somebody who has provided specific information time after time that's been known to be true and correct and corroborated by other law enforcement officers and through findings from search

warrants." On cross-examination, Deputy Hughes agreed that some informants are paid or have criminal records. The prosecutor then argued that the defense had opened the door to questions about the reliability of the CRI and the substance of the tip. The district court allowed "very limited" redirect questions regarding the informant's reliability. In response, appellant's attorney asked if she could inquire regarding any benefits the CRI had received in exchange for the tip. The district court responded: "[A]s I have already stated, your line of questioning is eliciting inadmissible evidence that goes to a legal issue for which this jury is not to determine. So if you are asking may you do so, the answer to that is no."

Appellant argues that the district court prohibited him from exploring whether the CRI was biased against him. Appellant is correct that cross-examining a witness about his partiality or bias is always relevant. *See State v. Lanz-Terry*, 535 N.W.2d 635, 640 (Minn. 1995). But the CRI was not a witness at trial and appellant provides no support for his assertion that the CRI was somehow "a witness in [absentia]."

The district court did not abuse its discretion in prohibiting appellant's question about benefits to the CRI. Even if it did, any error was harmless beyond a reasonable doubt because the jury convicted appellant after his attorney attacked the CRI's credibility throughout the trial and suggested in closing that the CRI may have had a motive to lie, may have been paid, and may have been trying to avoid prosecution. Given the evidence presented at trial and the defense attorney's arguments regarding the CRI's credibility, questioning Deputy Hughes about benefits the CRI received would not have altered the jury's verdict. *See Davis*, 820 N.W.2d at 533.

14

**D.     Disclosure of the Informant's Identity**

 "We review a district court order regarding disclosure of a confidential informant's identity for an abuse of discretion." *State v. Rambahal*, 751 N.W.2d 84, 90 (Minn. 2008). Although the state may withhold a confidential informant's identity to protect the informant, it must disclose the identity if that information would be "relevant and helpful to the defense of an accused." *Id.* (quotation omitted). The defendant has the burden to show that the disclosure is necessary and the necessity is determined "on a case-by-case basis." *Id.*

When determining whether to order disclosure, the district court must consider whether (1) the confidential informant is a material witness; (2) the confidential informant's testimony is material to the issue of guilt; (3) the testimony of the officers is suspect; and (4) the confidential informant's testimony "might disclose entrapment." *Id.* (quotation omitted). The district court properly considered these four factors and denied appellant's pretrial motion to disclose the CRI's identity because (1) the CRI was not a material witness; (2) the CRI's testimony was not material to the issue of appellant's guilt; (3) the testimony of the officers was not suspect; and (4) there was no entrapment defense.

Appellant argues that the CRI was a material witness because the jury could infer that Deputy Hughes relied on information from the CRI that appellant possessed drugs. But the CRI's information only established probable cause for the search warrant. It did not provide material information regarding whether appellant possessed the cocaine found in the apartment. Contrary to appellant's initial belief, the CRI was not the alleged

15

alternative perpetrator. Because the CRI could not testify that appellant possessed the cocaine found in the apartment, he was not a material witness. *See State v. Medal-Mendoza*, 718 N.W.2d 910, 919-20 (Minn. 2006) (explaining in a plain-error analysis that disclosure of the confidential informant's identity was not necessary because the informant did not witness the crime and his statement was used only to explain the police investigation, not to suggest that the defendant committed the charged offense); *State v. Marshall*, 411 N.W.2d 276, 280 (Minn. App. 1987) (explaining that the defendant failed to show the need for disclosure when the informants' information was used to obtain search warrants and the charges were based on the search results), *review denied* (Minn. Oct. 26, 1987).

Because appellant did not meet his burden to require disclosure of the CRI's identity, the district court did not abuse its discretion by denying appellant's disclosure motion. *See Rambahal*, 751 N.W.2d at 90.

**IV.    The district court did not plainly err by admitting evidence during trial.**

Appellant next argues that the district court erred by allowing (1) testimony about the Violent Offender Task Force; (2) officer opinion testimony; (3) testimony suggesting drug sales; and (4) an excerpt from his jail phone call. Generally, "[e]videntiary rulings rest within the sound discretion of the [district] court and will not be reversed absent a clear abuse of discretion." *Amos*, 658 N.W.2d at 203. But because appellant did not challenge the first two issues below, we review the introduction of that evidence for plain error. *See State v. Martinez*, 725 N.W.2d 733, 738 (Minn. 2007). Under this test, appellant must show that (1) there was an error; (2) that was plain; and (3) that affected

16

his substantial rights. *See Davis*, 820 N.W.2d at 534. If these prongs are met, we then determine whether to "address the error to ensure fairness and the integrity of the judicial proceedings." *State v. Griller*, 583 N.W.2d 736, 740 (Minn. 1998).

### A. Testimony about the Violent Offender Task Force

At the start of his testimony, Deputy Hughes stated that he worked for Hennepin County's Violent Offender Task Force, which "focus[es] on violent crimes and narcotics investigations." Deputy Hughes explained that his job included "[l]ocating and apprehending violent felons, [and] initiating and targeting investigations towards violent offenders and narcotics traffickers." Deputy Hughes later testified that he investigated appellant while working as a member of the task force. A second officer testified that the role of the task force was to "[b]asically go after the top 50 offenders, go after people that are, basically, deal with dope and guns, try to take the worst of the worst off the street." This officer stated that he also investigated appellant as part of the task force.

Appellant did not object to the officers' testimonies at trial, but now argues that their statements regarding the task force were "inflammatory and irrelevant." We disagree. The officers' general statements about the task force were relevant because they provided context for the investigation. *See id.* at 743 ("Evidence is admissible to give jurors the context for an investigation."). The statements also were not highly prejudicial because they did not address appellant's behavior or attack his credibility. *See State v. Strommen*, 648 N.W.2d 681, 687 (Minn. 2002) (determining that testimony was highly prejudicial when it "portrayed [the appellant] as a person of bad character" and may have led the jury to punish him for other bad acts). Because the challenged

17

testimony provided brief context for the investigation and did not attack appellant personally, appellant has not shown a clear or obvious error. *See id.* at 688 ("An error is plain if it was clear or obvious." (quotations omitted)).

In addition, appellant has not met his "heavy burden" to show that any error had a significant effect on the jury's verdict. *See Griller*, 583 N.W.2d at 741 (explaining the requirement that any error must affect substantial rights). Appellant merely speculates that the jury could have convicted him based on an inference that appellant had engaged in past criminal behavior. There is no evidence to support this speculation, particularly in light of the district court's instructions that appellant should not be presumed guilty due to his arrest, charging, or trial and that evidence of appellant's past convictions must be considered only as affecting his credibility, not as evidence of his guilt of the charged offense. We presume that the jury followed the district court's instructions. *State v. Taylor*, 650 N.W.2d 190, 207 (Minn. 2002). The officers' brief explanations of the Violent Offender Task Force did not significantly affect the jury's verdict. *See Davis*, 820 N.W.2d at 535 (concluding that the appellant had not shown a significant effect on the verdict when the challenged testimony was general in nature, cumulative to other evidence, corroborated by other evidence, and "only minimally relied on" at trial).

## B. Officer Opinion Testimony

At the end of Deputy Hughes's direct testimony, the prosecutor asked: "Deputy Hughes, based on your training and experience and all of the evidence recovered at the scene, who did you believe the nearly eight ounces of cocaine recovered belonged to?" Deputy Hughes identified appellant. Appellant did not object to this question or answer

18

at trial, but now argues that Deputy Hughes's opinion testimony was erroneous and prejudicial.

Appellant argues that Deputy Hughes "[e]ssentially" testified as an expert. But he cites no caselaw to support this assertion. Even if Deputy Hughes's opinion testimony was not helpful to the jury, *see* Minn. R. Evid. 702, appellant has not met his "heavy burden" to show that any error affected his substantial rights. *See Griller*, 583 N.W.2d at 741. The challenged opinion comprises one line of Deputy Hughes's extensive testimony over the course of two days, and addresses only why appellant was arrested following the search. In addition, the jury was instructed that opinion testimony "is entitled to neither more nor less consideration by you than any other evidence" and that its believability and weight must be evaluated. There is no evidence that Deputy Hughes's brief opinion caused the jury to ignore this instruction or other instructions regarding the presumption of innocence, the burden of proof, and the jury's role in judging the credibility of each witness.

### C. Testimony Suggesting Drug Sales

Deputy Hughes also testified generally about the typical user amounts and prices of cocaine sold on the street. After he described the items law enforcement found when executing the search warrant, the following exchange took place:

> PROSECUTOR: Deputy, you testified that over $5,000 in cash was recovered from that bedroom. In your training and experience, is it typical to find large amounts of cash like that when investigating narcotics crimes?
> DEPUTY HUGHES: It is, yes.
> PROSECUTOR: And in your training and experience, what does that amount of cash indicate to you?

19

DEFENSE ATTORNEY: Objection.  Relevance.
THE COURT: Overruled.
DEPUTY HUGHES: That a part of the narcotics [was] already sold off and that that currency is from narcotics sales.
. . . .
PROSECUTOR: Deputy, we saw photographs of the large amount of cocaine recovered from the closet in eight separate packages.  What did that type of packaging in your training and experience indicate to you?
DEFENSE ATTORNEY: Objection.  Relevance.
THE COURT: Overruled.
DEPUTY HUGHES: Cocaine is often packaged—when it's packaged in large quantities, it's packaged in ounce weights for sale.  Cocaine is generally sold—if it's sold in larger amounts, it's sold in—by the ounce.

Appellant argues that this testimony about drug sales was irrelevant to his first-degree-possession charge.  Appellant is correct that he was charged with first-degree possession and that a drug sale is not an element of this offense.  *See* Minn. Stat. § 152.021, subd. 2(a)(1) (2012).  But the state argues that the testimony was relevant to the jury's consideration of appellant's alternative-perpetrator defense.  The state asserts that no alternative perpetrator would relinquish the large amounts of cocaine and cash found in the closet merely to set appellant up.  The officers found 219 grams of cocaine in the bedroom closet, well over the 25 grams needed for first-degree possession.  *See id.* Because the jury could use the evidence about drug sales to analyze appellant's claim that he was set up, the evidence was at least minimally relevant to its determination regarding appellant's possession of the cocaine.  *See* Minn. R. Evid. 401 (stating that relevant evidence must only have "any tendency" to make a fact more or less probable).  The district court therefore did not abuse its discretion in allowing this challenged testimony.

20

Even if the district court abused its discretion, appellant has not shown prejudice. Officers found appellant in the west bedroom and "eight large bags of suspected cocaine," cash, and documents in appellant's name in the west bedroom closet. Officers also found appellant's cellphone, other mailings in his name, and a photograph of him in the room. Given the strong evidence of appellant's constructive possession, we conclude that testimony about the cocaine packaging did not significantly affect the jury's verdict. *See State v. Post*, 512 N.W.2d 99, 102 n.2 (Minn. 1994) (explaining that, if the district court erred in admitting evidence, we must determine "whether there is a reasonable possibility that the wrongfully admitted evidence significantly affected the verdict").

### D. Excerpt from Jail Phone Call

On the second day of trial, the prosecutor announced that appellant had contacted his girlfriend the night before in violation of the court's no-contact order and that the state had a copy of the jail phone call. The district court denied the state's request to introduce the call in its case in chief, finding that the danger of unfair prejudice outweighed the probative value of the evidence.

On both cross-examination and redirect, appellant denied that he had spoken to T.E. about his testimony. The prosecutor then asked to introduce the jail call as rebuttal evidence, and appellant's attorney objected. The district court agreed with the prosecutor that appellant's testimony about not speaking with T.E. was inconsistent with a portion of the phone call. But the district court limited the rebuttal evidence to the portion of the call that "is inconsistent and provides context for [appellant's] statement." The jury heard the following portion of the jail phone call:

21

[T.E.] He came, he was there. He was in there when you were sitting in the hallway. He came . . . He was with me. We sat there and talked. They asked him the same things, got him a lawyer and everything. You know they said they can't mess with y'all period. You know what I'm saying? They can't charge y'all with nothing and the only thing you gotta do is just, you know, tell the truth. Let them know we was sleeping on the couch. [T.E.] let us stay the night over there. (inaudible) He gave us permission to stay that night. And you know we was on the couch asleep and uh we got up and went in the room and uh, shit. You know and went to sleep in the room when nobody wasn't there. Then shit, we woke up when the house was getting raided. That's it. You know who's coke? No, you know you don't sell drugs, I ain't never saw him sell no drugs. That's it. And there ain't gotta be nothing else. But I, you know, you know man, you see that what they trying to do.

Appellant then testified that he talked to T.E. about whether he was coming to trial and was going to testify, but did not coach T.E. regarding his testimony.

During jury deliberations, the jury requested to hear the phone call again and the district court played the recording. After the verdict, appellant argued to the district court that he was entitled to a new trial based on the admission of the phone call. The district court rejected this argument because the call was introduced for impeachment as directly contradictory to appellant's testimony and "was more relevant tha[n] prejudicial."

"[R]ebuttal evidence is evidence that explains, contradicts, or refutes evidence elicited by the defense" and may include evidence that is not otherwise admissible. *State v. Gutierrez*, 667 N.W.2d 426, 435 (Minn. 2003). "The determination of whether or not something is appropriate rebuttal evidence rests within the discretion of the [district] court and will only be reversed upon a showing of a clear abuse of discretion." *Id.*

22

Appellant argues that the district court abused its discretion by playing more than the following portion of the phone call: "[T.E.] He came, he was there. He was in there when you were sitting in the hallway. He came . . . He was with me. We sat there and talked. They asked him the same things, got him a lawyer and everything." But appellant does not support this assertion and we disagree that the district court abused its discretion by playing its chosen excerpt. The district court explained that it eliminated the prejudicial portion of the phone call and "left in enough to provide context for [appellant's] statement." Rebuttal evidence can explain as well as contradict other evidence. *See id.*

In addition, appellant fails to show prejudice. Before playing the phone call, the district court instructed the jury regarding how to weigh witness credibility and explained that prior inconsistent statements should only be considered for that purpose. The prosecutor then introduced the phone call through officer testimony without explaining who appellant called or how the call was recorded. Because neither the prosecutor nor the phone call identified the call's recipient, there was no way for the jury to infer, as appellant contests, that appellant was coaching his girlfriend to testify in a certain manner and that she declined to testify accordingly. We conclude that the phone call's relevance in contradicting appellant's testimony outweighed any danger of unfair prejudice, *see* Minn. R. Evid. 403, and did not substantially affect the jury's verdict in light of the other strong evidence of appellant's guilt, *see Post*, 512 N.W.2d at 102 n.2.

**V.** **The district court did not abuse its discretion by denying appellant's request for a jury instruction regarding fifth-degree possession.**

The Bureau of Criminal Apprehension (BCA) determined that the officers seized 219 grams of cocaine from the bedroom closet. But the BCA did not test the substance found in the sweatpants because its "policy is to analyze up to the highest charging level." Because the cocaine in the closet met the first-degree charging level and the cocaine in the sweatpants would not have increased the charging level, the BCA did not test the other substance "due to resources and time." Nevertheless, appellant requested a "lesser-included instruction" for fifth-degree possession based on the drugs found in the sweatpants. The district court denied appellant's motion for this instruction.

We review the district court's denial of a requested lesser-included-offense instruction for an abuse of discretion. *State v. Dahlin*, 695 N.W.2d 588, 597 (Minn. 2005). Although the district court must give the requested instruction if warranted, the failure to do so "is grounds for reversal only if the defendant is prejudiced thereby." *Id.* (quotation omitted). The district court must give the lesser-included-offense instruction "when 1) the lesser offense is included in the charged offense; 2) the evidence provides a rational basis for acquitting the defendant of the offense charged; and 3) the evidence provides a rational basis for convicting the defendant of the lesser-included offense." *Id.* at 598. When making this analysis, the district court must view the evidence in the light most favorable to the party requesting the instruction and must not weigh the evidence or make credibility determinations. *Id.* Here, the district court concluded that the "evidence does not provide a rational basis for acquitting [appellant] of the offense charged and fails

24

to provide a rational basis for convicting [appellant] of a lesser-included offense of controlled substance crime in the fifth-degree."

We agree with the district court that the record evidence provides no rational basis to convict appellant of fifth-degree possession. Appellant is correct that the amount of the controlled substance is irrelevant to a fifth-degree-possession conviction. *See* Minn. Stat. § 152.025, subd. 2(a) (2012) (stating that a person is guilty for possessing one of the specified substances). But the state still must show that the defendant possessed one of the specified substances. *See id.*; 10A *Minnesota Practice*, CRIMJIG 20.36 (Supp. 2014). Because the BCA did not test the substance found in the sweatpants, there is no evidence that it was actually cocaine, and appellant cannot be convicted of fifth-degree possession.

Appellant argues that the substance's identity can be established through circumstantial evidence. *See State v. Olhausen*, 681 N.W.2d 21, 28-29 (Minn. 2004) (holding that circumstantial evidence regarding a substance's identity was sufficient to uphold the respondent's convictions for first-degree controlled substance offenses). But in *Olhausen*, the state introduced several pieces of evidence regarding the substance's identity, including statements from and actions by the respondent and witness testimony, and the evidence was circumstantial because the respondent had prevented testing. *Id.* at 26, 28-29. The record here contains no similar "compelling" circumstantial evidence regarding the identity of the substance in the sweatpants. *See id.* at 28. The district court therefore did not abuse its discretion by denying appellant's requested instruction.

In addition, appellant cannot show prejudice. *See Dahlin*, 695 N.W.2d at 597. The jury was instructed that, to convict appellant of first-degree possession, it must conclude that he "knowingly possessed one or more mixtures of a total weight of 25 grams or more containing cocaine." *See* Minn. Stat. § 152.021, subd. 2(a)(1). In convicting appellant of this charge, the jury necessarily rejected appellant's alternative-perpetrator defense and determined that he constructively possessed the cocaine in the closet, which was far more than 25 grams. Contrary to appellant's assertion, the jury could not have convicted appellant based on cocaine in the sweatpants alone because it heard no evidence regarding the weight of the substance in the sweatpants.

## VI.    Appellant was not deprived of a fair trial.

Finally, appellant argues that the cumulative effect of the trial errors deprived him of a fair trial. Appellant is entitled to a new trial if cumulative errors denied him a fair trial. *See State v. Jackson*, 714 N.W.2d 681, 698 (Minn. 2006). Given our conclusions above that any errors were harmless beyond a reasonable doubt, appellant is not entitled to a new trial.

**Affirmed.**